UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSHUA A. DAVIS,

     Plaintiff,

v.                   Case No:  2:21-cv-693-JES-NPM

D. HALL, DEREK SNIDER, JACOB
DAWSON, LARS SEVERSON, GRAIG
BROCK,  ALBERT  SCARPATI,
JEFFREY  ROBINSON,  MOSES
LAMAR  FROST,  SHANNON
MILLIKEN,  JORGE  CHAVARRIA,
TINA  ROBERTS,  CHRISTOPHER
WELSH, JOSEPH BOONE, CHARLES
JEAN-PIERRE, ZACHARY DITORO,
and MEGAN SPRY-TORRES,

     Defendants.

_____

## OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. #24) and Plaintiff's Motion for Leave to Amend and Motion for Extension of Time to Amend (Doc. #26). Both motions are contested. Plaintiff Joshua Davis is a prisoner of the Florida Department of Corrections (FDOC). He sues Defendants under 42 U.S.C. § 1983. All but two unserved Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(6).[1]

_____

[1] Although Hall and Welsh have not appeared, the Court may dismiss sua sponte any claims against them that fail to state a claim. See 28 U.S.C. § 1915A.

## I.   Background

The Court recounts the facts as pled in Davis's Amended Complaint (Doc. #14), which it must take as true when considering the Motion to Dismiss.   See Chandler v. Sec'y Fla. Dep't of Transp., 695 F.3d 1194, 1198-99 (11th Cir. 2012).   Because Davis filed his Amended Complaint pro se, the Court construes it liberally and holds it "to less stringent standards than formal pleadings drafted by lawyers[.]"   See Erickson v. Pardus, 553 U.S. 89, 94 (2007).

Davis claims he was the victim of a series of retaliatory acts by Defendants.   It started with a dispute over how many books Davis could have in his possession.   FDOC policy allows an inmate to have four personal books, with religious and legal books exempted from the limit.   Davis normally received four books a week.   But for three weeks, Defendant Hall—supervisor of the property room—did not deliver Davis's books, and they piled up. Hall then confiscated seven books because they exceeded the limit.

On July 28, 2020, Hall filed two grievances against the property room.   The grievances were approved, and two of Hall's legal books were returned.   On August 5, 2020, Hall, Spry-Torres, Scarpati, Ditoro, two supervisory officers, and five other members of the staff conducted a search of Davis's cell.   They took Davis's property into the dayroom to inventory it.   Normally, only two officers perform random cell searches, and the inmates' property

remains in the cell.  When another inmate asked Hall whey she was messing with Davis, she said, "He wrote me up," followed by, "I don't get mad. I get even."

Hall, Spry-Torres, and Davis signed an inventory of the items found in the search.  The inventory did not include a vitamin bottle.  But Hall wrote in a disciplinary report that she found a vitamin bottle during the search, and that the contents tested positive for MDMA.  Jean-Pierre was assigned to investigate the disciplinary report.  On August 25, 2020, Davis submitted a grievance stating the search and disciplinary report were retaliation for the grievances Davis made against Hall.  Brock and Dawson rejected it for lack of evidence.

On August 27, 2020, Roberts and Chavarria conducted a hearing on the disciplinary report.  Boone claimed he tested the pills and found them positive for MDMA.  Davis was found guilty and was sentenced to 60 days of disciplinary confinement.  He appealed the decision in a formal grievance.  Roberts reviewed the grievance, and Dawson and Snider denied it.  Davis then appealed to the FDOC Secretary.  Milliken returned the appeal without action on the Secretary's behalf.  Davis submitted more grievances, but they were ultimately denied.

On September 24, 2020, after receiving an email from Davis's friend Tina Piel, Welsh sent the pills to the Florida Department

of Law Enforcement (FDLE) for testing.  The results came back in December 2020.  The FDLE found no MDMA in the pills.

On December 22, 2020, Piel sent an email to Snider, Scarpati, Welsh, and the FDOC Regional Director's office about the FDLE lab results and Piel's advocacy for an investigation of Davis's complaints.  The next day, Davis was moved to a cell with a damaged heater and non-functional toilet.  Around 3:00 a.m. on December 24, 2020, Defendants Frost and Ditoro and non-parties Torres, Tuzik, Speight, and Miller conducted a search of Davis's cell. The search included use of a metal detection wand, two strip searches, and a pat-down while Davis was unclothed.  Ditoro took Davis's watch.  About 20 minutes after the second strip search, Frost claimed he saw a cell phone fall from Davis's boxers.

Frost wrote a disciplinary report and imposed property restrictions on Davis for four days.  From December 24-28, 2020, Davis was left without a mattress, bedding, clothing, shoes, and hygiene items in 40-degree weather.  Jean-Pierre investigated the disciplinary report, and Davis was found guilty on January 13, 2021.  Davis submitted several grievances against Frost and Hall in January 2021.  On January 27, 2021, Frost withheld breakfast from Davis.

## II.  Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as

true and view them in a light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation.  The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct.  See Iqbal, 556 U.S. at 678.  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 557 (internal quotation marks omitted)).  And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. Twombly, 550 U.S. at 555.

Davis files his Amended Complaint under 42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law.  Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and

the constitutional deprivation.  <u>Marsh v. Butler Cnty., Ala.</u>, 268 F.3d 1014, 1059 (11th Cir. 2001).

## III. Analysis

Davis asserts six theories of liability: retaliation, failure to protect, cruel and unusual punishment, conspiracy, denial of access to the courts, and denial of substantive due process.

Defendants argue the claims relating to disciplinary proceedings are <u>Heck</u>-barred.  In <u>Heck v. Humphrey</u>, the Supreme Court held that a § 1983 plaintiff seeking to "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" must prove the conviction or sentence was reversed or invalidated.  512 U.S. 477, 487 (1994). The Court explained:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Id.</u>

Davis does not explicitly or implicitly challenge the validity of his conviction or sentence. Defendants raise <u>Heck</u> against Davis's claims that implicitly challenge the validity of prison disciplinary hearings. <u>Heck</u> "is not categorically applicable to all suits challenging prison disciplinary actions." <u>Pittman v. Tucker</u>, 213 F. App'x 867, 869 (11th Cir. 2007). When a disciplinary action affects a prisoner's sentence—e.g., when good-time credits are at stake—<u>Heck</u> applies. But that is not the case here.

Davis is serving a life sentence, and there is no indication this action will have any impact on the sentence he serves. The Eleventh Circuit's analysis in <u>Pittman</u> is directly on point:

> Pittman's complaint does not seek to challenge the validity of his underlying conviction, and it does not seek to affect the time he would serve related to his conviction. Although Pittman does claim officers retaliated against him by filing a false disciplinary report and placing him in confined management, there is no indication that these disciplinary actions affected his sentence. Moreover, the defendants do not assert that the disciplinary actions affected the length of Pittman's sentence. Accordingly, we hold that Pittman's claims are not <u>Heck</u>-barred because there is no indication that a judgment in his favor would necessarily imply the invalidity of his conviction or his sentence.

<u>Id.</u> None of Davis's claims are <u>Heck</u>-barred.

Defendants raise Eleventh Amendment and qualified immunity. Eleventh Amendment immunity protects the State of Florida from suit. It does not apply here because Davis sues Defendants in

their individual—rather than official—capacities.   See Melton v. Abston, 841 F.3d 1207, 1234 (11th Cir. 2016) ("State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.  The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); see also Hafer v. Melo, 502 U.S. 21, 31 (1991).

Qualified immunity applies to individual capacity claims.  It protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986). Courts apply a two-step analysis with a shifting burden.  A government official asserting the defense must first establish that he was acting within his discretionary authority at the time of the challenged conduct."  Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F.4th 1118, 1125 (11th Cir. 2021).

If a defendant makes the initial showing, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right and (2) "the right was clearly established at the time of the incident."  Id. at 1126 (quoting Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005)).  A right is clearly established if "the state of the law on the date of the alleged misconduct placed defendants on 'fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'"

Hardigree v. Lofton, 992 F.3d 1216, 1224 (11th Cir. 2021) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

Davis argues Defendants failed to meet their burden because violating his constitutional rights is outside their discretionary authority.  But Davis conflates the first and second parts of the qualified immunity analysis.  "A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority."  Mikko v. City of Atlanta, Ga., 857 F.3d 1136, 1144 (11th Cir. 2017).  Courts "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances."  Id. (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004)).  "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'"  Id. (quoting Herbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Applying these principles, Defendants were clearly acting within the discretionary authority of their respective positions with the FDOC.  So for each claim, Davis bears the burden of establishing not just a constitutional violation, but one that was

clearly established at the time.  "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7 (2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).  Davis need not present a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 8 (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)).  "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)).

### a. Retaliation

"[T]he First Amendment prohibits officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances." Mpaka v. Jackson Memorial Hospital, 827 F. App'x 1007, 1010 (11th Cir. 2020).  To succeed on a retaliation claim, a prisoner must prove three elements: "(1) his speech was constitutionally protected; (2) he suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Id. (quoting O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011)).  "To establish causation, the plaintiff must show that the defendant

was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." <u>Moton v. Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting <u>Smith v. Mosley</u>, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Davis alleges eight instances of retaliation.  First, Davis accuses Hall, Spry-Torres, and Scarpati of searching Davis's cell and planting the vitamin bottle in retaliation for the two grievances Davis filed against Hall on July 28, 2020.  But the alleged facts do not support the claim against Spry-Torres and Scarpati.  Davis alleges Spry-Torres and Scarpati participated in the search and inventoried Davis's property.  A cell search would not likely deter a person of ordinary firmness from engaging in free speech.  Planting contraband is a different matter, but Davis alleges that Hall reported the vitamin bottle—not Spry-Torres or Scarpati.  And while Davis has adequately alleged that Hall had a retaliatory motive—Davis had filed two grievances against her, and she said "I don't get mad.  I get even."—he has not pled any facts showing that Spry-Torres and Scarpati participated in the search to retaliate against Davis for free-speech activity.[2]

---

[2] In his Response, Davis makes new allegations against Spry-Torres, Scarpati, and other Defendants to establish a retaliatory motive.  But a 12(b)(6) motion to dismiss is a test of the sufficiency of a complaint.  Courts do not consider new factual allegations raised in a response brief.

Second, Davis claims Boone falsified drug test results to support Hall's disciplinary report. But Davis alleges no facts suggesting Boone was subjectively motivated to punish Davis for writing grievances.

Third, Davis seeks to hold Scarpati liable for overseeing Hall, Spry-Torres, and the other officers present for the search. It is well settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the acts of their subordinates. Keith v. DeKalb Cnty, Ga., 749 F.3d 1034, 1047 (11th Cir. 2014). "Plaintiffs must instead allege that the supervisor, through his own actions, violated the Constitution." Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022). Scarpati's supervisory responsibilities cannot be the bases of a § 1983 claim, and the Court already determined that Davis failed to plausibly allege that Scarpati's own actions demonstrated a retaliatory motive.

Fourth, Davis claims Roberts and Chavarria continued the retaliation by finding Davis guilty in the disciplinary hearing. Davis asks the Court to infer a retaliatory motive because they found him guilty "in the face of contradictory evidence." (Doc. #14 at 20). But the fact that Roberts and Chavarria believed Hall's story over Davis's is not enough to plausibly assert a retaliatory motive.

Fifth, Davis claims an email from Tina Piel prompted Frost and Ditoro to search Davis's cell and body, plant contraband, and write a disciplinary report. Ditoro confiscated Davis's watch during the search. Frost then imposed property restriction on Davis, leaving him to sleep on bare steel in 40-degree weather wearing only boxer shorts. Davis has not plausibly alleged Frost and Ditoro were subjectively motivated to punish Davis for his speech. The communication that allegedly prompted the search was an email from Piel to five FDOC officials. Davis does not connect the search with his own First Amendment activity.

Sixth, Davis claims Frost deprived him of breakfast one morning in retaliation for three grievances Davis filed against Frost two weeks prior. Frost argues Davis "fails to provide any details of a retaliatory motive." (Doc. #24 at 13). Davis relies on "temporal proximity" to establish motive. (Doc. #27 at 7). While a chronology of events can create a plausible inference of causation, see Hempstead v. Carter, No. 5:06-cv-68-MCR-EMT, 2006 WL 2092383, at *6 (N.D. Fla. July 26, 2006), the facts do not support such an inference here.

Seventh, Davis seeks to hold Snider, Dawson, Severson, Robinson, and Brock liable for denying grievances for retaliation. He claims they were "indirect participants in the retaliation because they refused to intervene." (Doc. #14 at 22). But he

does not allege any facts from which the Court could infer a retaliatory motive.

Eighth, Davis seeks to hold Jean-Pierre liable for his investigation of a disciplinary report because Jean-Pierre did not call the witnesses or obtain the evidence Davis identified. But again, Davis alleges no facts supporting an inference of a retaliatory motive.

Davis's retaliation claim against Hall survives. The Court will dismiss the retaliation claims against the other Defendants.

### b. Failure to protect

Davis accuses eight Defendants of violating his Eighth Amendment rights by failing to protect him from retaliation. He claims Snider, Severson, Dawson, Robinson, Scarpati, Brock, Milliken, and Welsh had a duty to protect Davis from retaliation but failed to adequately investigate Davis's allegations, thereby enabling future retaliation. In addition, Davis accuses Welsh of refusing to act after FDLE lab results proved the confiscated (or planted) pills were not MDMA.

This theory does not withstand scrutiny. The allegations underlying these claims do not fit within the framework of the Eight Amendment. "The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825,

832 (1994)) (cleaned up).  To establish an Eighth Amendment failure-to-protect claim, a plaintiff must show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015).  The first element—a substantial risk of serious harm—requires a "strong likelihood of injury." Id.  But the crux of Davis's claim is a risk of continued retaliation, not a risk of physical injury.

It appears Davis seeks to hold the identified Defendants indirectly liable for retaliation they could have, but did not, stop.  It is analogous to supervisory liability.  A supervisor may be held liable under § 1983 only if the plaintiff shows that the supervisor "either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cnty., 749 F.3d 1034, 1047-48 (11th Cir. 2014).  "There can be no supervisory liability…if there was not underlying constitutional violation." Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008).

Davis fails to establish a causal connection.  The only retaliation claim that survived the Court's analysis in the above section is against Hall, who allegedly planted contraband pills during a search of Davis's cell and wrote a false disciplinary

report.   It is the first retaliatory incident alleged in the
Amended Complaint.   Defendants' failure to properly investigate
Hall's actions did not cause subsequent retaliation because there
was no subsequent retaliation.   Davis's claims under this theory
will be dismissed.

### c. Cruel and unusual punishment

Davis argues Frost violated the Eighth Amendment in three
ways.   First, Frost imposed property restrictions on Davis for
five days, which left Davis in his 40-degree cell with no working
heater and without a mattress, bedding, clothing (expect for
boxers), footwear, hygiene items, or other personal property.
Second, Frost withheld breakfast from Davis one morning.   And
third, Frost touched Davis's genitals during a pat-down after
officers used a metal detection wand twice and conducted two strip
searches of Davis.

The Eighth Amendment requires prison officials to "provide
humane conditions of confinement; prison officials must ensure
that inmates receive adequate food, clothing, shelter, and medical
care[.]"   Farmer v. Brennan, 511 U.S. 825, 832 (1994).   But not
every deprivation violates the Constitution.   The Supreme Court
has "held that a prison official violates the Eighth Amendment
only when two requirements are met."   Id. at 834.   "First, the
deprivation alleged must be, objectively, sufficiently serious; a
prison official's act or omission must result in the denial of the

minimal civilized measure of life's necessities."  Id. (internal quotation marks and citations omitted).  Second, "a prison official must have a sufficiently culpable state of mind[,]" that is, "one of deliberate indifference to inmate health or safety[.]" Id. (internal quotation marks and citation omitted).

Eleventh Circuit precedent on the Eighth Amendment and prison cell conditions has shifted over time.  In Chandler v. Baird, the Eleventh Circuit held, "plaintiff is entitled to have the trier of fact determine whether the conditions of his administrative confinement, principally with regard to the cell temperature and the provision of hygiene items, violated the minimal standards required by the Eighth Amendment."  926 F.2d 1057, 1065 (11th Cir. 1991) (Chandler I).  The court went on to explain "that the right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort and in conditions lacking basic sanitation was well established in 1986."  Id. at 1065-66.

But after Chandler I, the Supreme Court refined the Eighth Amendment framework, and the Eleventh Circuit recognized that "'severe discomfort' is insufficient to establish the objective component of an Eighth Amendment conditions of confinement claim." Chandler v. Crosby, 379 F.3d 1278, 1295 (11th Cir. 2004) (Chandler II).  The Eleventh Circuit addressed uncomfortably cold prison conditions again in Bennett v. Chitwood:

> Bennett has failed to demonstrate an objective substantial risk of serious harm. While we accept that Bennett felt uncomfortably cold, he was required to remain nude for a one-time period of approximately 10.5 hours and did not go without clothing or bed linens overnight. And nothing in the record shows Bennett reported medical problems as a result of the jail conditions he alleges. This case is not one in which ice formed inside the cell. Given the limited duration of Bennett's exposure to cool temperatures and the modest severity of those temperatures (even accepting Bennett's "estimate" that the temperature was "in the 50's"), the conditions were no so extreme to reach the level of an Eighth Amendment violation.

519 F. App'x 569, 574 (11th Cir. 2013).

It is not clear whether the property restrictions Frost imposed violated Davis's Eighth Amendment rights. Davis alleges conditions worse than those in Chandler I, which the Eleventh Circuit found serious enough to survive summary judgment. Davis alleges he was left in colder temperatures for longer and with fewer comfort items. But the Eleventh Circuit receded from Chandler I in Chandler II after the Supreme Court refined Eighth Amendment analysis. Discomfort, even severe discomfort, is not enough. See Bennett, supra. Thus, even if Frost violated the Eighth Amendment, Davis has not satisfied his burden under the qualified immunity analysis. The property restrictions Frost imposed did not violate a clearly established constitutional right.

Davis next claims Frost violated the Eighth Amendment by withholding breakfast one morning. Davis acknowledges that "being

deprived of one mean [sic] is minimal punishment," but argues it was unconstitutional because of Frost's retaliatory motive. (Doc. #14 at 26-27). Davis has not alleged that missing a meal "posed an unreasonable risk of serious damage to his future health or safety[.]" However v. Belleis, 703 F. App'x 908, 911 (11th Cir. 2017). Although it is obviously inappropriate to withhold food from prisoners, Davis's allegations here do not establish an Eighth Amendment violation. See id. (finding no plausible Eighth Amendment claim because "However did not assert that missing one meal worsened his health").

Davis's third and final Eighth Amendment claim stems from Frost's search of Davis. Specifically, Davis alleges:

> Plaintiff was: 1) wanded with a metal detector while forced to bend at the waist; 2) strip searched by Sgt. Tuzik and CO L. Miller; 3) wanded again by a metal detector wearing only boxers; 4) then Defendant FROST performed an unauthorized unclothed pat search; and 5) the Plaintiff was strip searched a second time.

(Doc. #14 at 13). Davis claims Frost sexually assaulted him by touching his genitals during the pat search "for the purpose of humiliation and harassment." (Id. at 27). He

"In a case brought by a prisoner alleging sexual assault by a prison official, that sexual assault necessarily violates the Eighth Amendment." DeJesus v. Lewis, 14 F.4th 1182, 1196 (11th Cir. 2021). But "not every invasive touching by a prison official amounts to an Eighth Amendment violation." Id. at 1199. "There

are times when prison officials have a legitimate penological purpose to touch a prisoner in what may be an invasive manner," and deference is owed to prison officials.  Id. at 1197.  With these principles in mind, the Eleventh Circuit adopted a definition of "sexual assault" in the prison context:

> We hold that the "sexual assault" of a prisoner by a prison official in violation of the Eighth Amendment occurs when the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner.  See 18 U.S.C. § 2246(2).  At a minimum, those sexual acts include intentional sexualized touching underneath clothing, such as fondling or penetration; coerced sexual activity; combinations of ongoing harassment and abuse; and exchanges of sexual activity for special treatment or to avoid discipline.

Id.

Davis's allegation—that Frost touched his genitals during a pat search after less invasive methods revealed no contraband—is not included in the listed categories of sexual assault.  Whether such allegations amount to sexual assault must be determined on a case-by-case basis.  Id.  Relevant inquiries include: "whether the allege conduct is of a sexual nature; whether the alleged sexual assault did in fact occur; and whether the prison official intended to sexually gratify himself or acted for the purpose of humiliating, degrading, or demeaning the prisoner."  Id. at 1197.

The analysis of this claim parallels the analysis of Davis's property-restriction claim.  Whether the Amended Complaint states

a plausible Eighth Amendment claim related to the pat search is a close call.  On one hand, Davis does not allege the touch was sexual in nature, and courts owe prison officials deference when preforming important safety functions like searching inmates.  On the other hand, Davis alleges the touch served no purpose but humiliation because Davis had already been searched by less invasive means.

But as with the property-restriction claim, Davis's search claim falls to qualified immunity because Davis does not show that Frost violated a <u>clearly established</u> right.  Davis does not present any case law putting Frost on notice that touching an inmate's genitals during an unclothed pat search violates the Eighth Amendment if the inmate has already been searched by less invasive means.  And the Court has found no such precedent.  Frost is thus entitled to qualified immunity for his search of Davis.

### d. Conspiracy

Davis accuses twelve Defendants of conspiring to cover up unlawful retaliation by Hall, Spry-Torres, and Frost.  Davis broadly claims that Hall, Spry-Torres, Snider, Dawson, Severson, Scarpati, Robinson, Brock, Welsh, and Milliken "agreed to cover up evidence of retaliation and systematically misused the grievance procedure to deny Plaintiff all resolutions of Plaintiff's complaints of retaliation."  (Doc. #14 at 26-27).  Davis makes more specific allegations against some Defendants: (1) Jean-Pierre

failed to investigate or identify witnesses when reviewing a disciplinary report; (2) Robinson ordered Hall to respond to the grievance of reprisal Davis filed against her, which Davis considers a violation of Fla. Admin. Code 33-103.015(6); and (3) Roberts and Chavarria ignored Davis's evidence at the hearing on Hall's disciplinary report.

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." Worthy v. City of Phenix City, Ala., 930 F.3d 1206, 1124 (11th Cir. 2019) (quoting Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010)).  To state such a claim, a plaintiff must allege "that the defendants reached an understanding to violate the plaintiff's constitutional rights and that an actionable wrong occurred." Id. (cleaned up).

Defendants challenge Davis's conspiracy claim for two reasons.  First, they argue Davis failed to allege an actionable wrong that violated his federal rights.  But Defendants have not contested Davis's retaliation claim against Hall, so that allegation can serve as the actionable wrong underlying a conspiracy claim.

Second, Defendants argue Davis failed to properly allege the existence of an agreement.  Indeed, there can be no agreement for conspiracy purposes amongst all but one Defendant (Welsh) because

they are employed by the FDOC. "Under the intracorporate conspiracy doctrine, a corporation's employees cannot conspire among themselves when acting in the scope of their employment, as their actions are attributed to the corporation itself, 'thereby negating the multiplicity of actors necessary for the formation of a conspiracy.'" Detris v. Coats, 523 F. App'x 612, 615 (11th Cir. 2013) (quoting Grider, 618 F.3d at 1261)). It does not matter that Davis sues Defendants in their individual capacities. The doctrine "prohibits a § 1983 claim against law enforcement officers in their individual capacities, as well as claims that do not seek to hold the corporate entity itself responsible for its agents' actions." Id. (internal citations omitted).

The only part of the conspiracy claim that survives the intraconspiracy doctrine is the allegation against Welsh, who works (or worked) for the Office of the Inspector General. But Davis does not allege any facts suggesting that Welsh had an understanding with any other Defendant to violate Davis's federal rights. The conclusory allegation that Welsh and nine others agreed to cover up evidence of retaliation is not enough. See Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1048 (N.D. Ga. 2016) ("The mere allegation of an agreement, by itself, is conclusory.")[3] Davis fails to state a conspiracy claim.

---

[3] The conspiracy claim also fails because the alleged cover-up did not cause a violation of his constitutional rights. See

### e. Access to the courts

Davis next accuses Defendants of impeding his access to the courts in two ways. First, he claims Hall and Frost wrote false disciplinary reports to scare him away from filing grievances. Second, Davis claims Snider, Dawson, Severson, Scarpati, Brock, and Milliken wrongly returned grievances without action for rule violations, preventing Davis from exhausting his administrative remedies as required by the Prison Litigation Reform Act (PLRA).

"It is well established that 'prisoners have a constitutional right of access to the courts.'" Arthur v. Comm'r, Ala. Dep't of Corr., 680 F. App'x 894, 908 (11th Cir. 2017) (quoting Bounds v. Smith, 430 U.S. 817, 821 (1977)). But the right is not freestanding; "rather, to state a claim for denial of access to the courts, an inmate must show actual injury." Id. That means a "plaintiff must identify within his complaint a 'nonfrivolous, arguable underlying claim.'" Barbour v. Haley, 471 F.3d 1222, 1226 (11th Cir. 2006) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)).

---

Hadley v. Guitierrez, 526 F.3d 1324, 1332 (11th Cir. 2008) (rejecting a conspiracy claim based on an alleged cover-up of the use of excessive force because the plaintiff failed to explain what constitutional right the cover-up infringed).

Davis fails to state an access claim.  The Amended Complaint does not identify any underlying claim—much less a nonfrivolous claim—that Davis was unable to present to a court.  Also, Davis relies on a misunderstanding of the PLRA's exhaustion requirement. The PLRA requires prisoners to exhaust all <u>available</u> administrative remedies before filing a § 1983 action.  42 U.S.C. § 1997e(a).  Courts recognize that prison officials can make grievance procedures unavailable by threatening retaliation or frustrating a prisoner's attempt to file and pursue grievances. <u>Turner v. Burnside</u>, 541 F.3d 1077 (11th Cir. 2008).  If Defendants rendered the grievance process unavailable with regard to certain claims, the PLRA will not prevent Davis from pursuing those claim in court.  Davis can point to a Defendant's misapplication of grievance rules to counter an exhaustion defense, but it does not give rise to an independent claim.

### f. Substantive due process

Davis claims Hall, Spry-Torres, and Frost violated his substantive due process rights by planting contraband during searches of his cell, then writing false disciplinary reports. Davis also accuses Hall and Spry-Torres of compelling Boone to falsify the drug test results to ensure that Davis would be punished.  Defendants argue the <u>Heck</u> doctrine bars Davis's due process claims.  As explained above, the Court disagrees.

Defendants do not otherwise challenge these claims, so they survive.

### g. Conclusion

The Court's 12(b)(6) analysis has substantially narrowed this case.  The surviving claims are (1) retaliation against Hall; and (2) violation of substantive due process against Hall, Spry-Torres, and Frost.  The Amended Complaint does not state plausible claims on the other theories and against the other Defendants. The Court will dismiss them under Rule 12(b)(6).

### IV.  Motion to Amend

After Defendants moved for dismissal, Davis filed a motion to amend his complaint for a second time.  (Doc. #26).  Defendants opposed the motion because the motion to dismiss was pending and Davis did not submit a proposed second amended complaint with his motion.  (Doc. #28).  Davis then filed a Proposed Second Amended Complaint, which would add three state-law claims: (1) assault and battery against Frost, Ditoro, and four other correctional officers who are not currently parties to this case; (2) civil theft against Hall and Ditoro; and (3) intentional and/or negligent infliction of mental or emotional distress against all Defendants. (Doc. #30).

Davis has already amended his complaint once, and Defendants oppose an additional amendment.  Davis can thus only amend again

with the Court's leave, which should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).

The Court finds that allowing the proposed amendment would not serve the interests of justice.  First, the Proposed Second Amended Complaint reasserts claims the Court is dismissing. Allowing the amendment would move the parties and the Court back to square one.  Second, the Court may only exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action…that they form part of the same case or controversy[.]"  28 U.S.C. § 1367(a).  The proposed state-law claims are not ancillary to Davis's surviving claims.  That is, they do not arise from the same transactions.  See <u>Am. Fed'n of State, Cnty., and Mun. Employees Council 79 v. Scott</u>, 949 F. Supp. 2d 1239, 1243 (11th Cir. 2013).

For these reasons, the Court denies Davis leave to file his Proposed Second Amended Complaint (Doc. #30).

Accordingly, it is hereby

**ORDERED:**

1.   Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. #24) is **GRANTED in part and DENIED in part.**

   a. All claims in the Amended Complaint are **DISMISSED without prejudice** except the retaliation claim against Hall and the substantive-due-process claims against Hall, Frost, and Spry-Torres.

b. Defendants Frost and Spry-Torres must file an answer to the Amended Complaint within **fourteen (14) days of this Order.**

c. The Clerk is **DIRECTED** to terminate Defendants Snider, Dawson, Severson, Brock, Scarpati, Robinson, Ditoro, Milliken, Chavarria, Roberts, Boone, and Jean-Pierre as parties to this case.

2.   Plaintiff's Motion for Leave to Amend and Motion for Extension of Time to Amend (Doc. #26) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this   26th   day of July 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies:
All parties